UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY A. AMES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF NOVATO, et al., <br><br> Defendants. | Case No. 16-cv-02590-JST <br><br> **ORDER DENYING MOTION TO SEVER PLAINTIFF D'AMICO'S CLAIMS INTO A SEPARATE ACTION AND GRANTING MOTION TO DISMISS** <br><br> Re: Dkt. Nos. 18, 20 |

Now before the Court are the Defendants' motions to sever and to dismiss. The Court will deny the motion to sever and grant the motion to dismiss.

## I.   BACKGROUND

### A.  Factual History

Plaintiffs Sasha D'Amico and Jeffrey Ames, both employees of the City of Novato police department, claim that the City and various police department employees discriminated against them based on D'Amico's gender and Ames' sexual orientation. D'Amico, a female, is currently a Patrol Sergeant. Compl., ECF No. 4 ¶¶ 22, 24. Ames, a homosexual male, worked as a canine officer in the police department, but has since been placed on administrative leave. Id. ¶ 55, 69. D'Amico and Ames worked in the same squad, and D'Amico was Ames' immediate supervisor. Id. ¶ 27, 44. At all times relevant to the complaint, both Plaintiffs were supervised by Lieutenant Oliver Collins. Id. ¶ 29.

D'Amico alleges that Lieutenant Collins discriminated against and harassed her because she is a woman, and Ames alleges that Lieutenant Collins discriminated against and harassed him because he worked under D'Amico and because he is a homosexual man. Id. ¶¶ 30-31, 56. Specifically, D'Amico alleges that Lieutenant Collins subjected her to unwarranted scrutiny,

retaliated against her by giving her negative performance evaluations after she participated in a gender discrimination investigation based on a complaint by another female employee, wore a sexually suggestive belt buckle, refused to speak to D'Amico even though they worked in the same office, falsely claimed that D'Amico did not properly supervise her subordinates, sent her demeaning and hostile emails, and generally sought to undermine her authority as a supervisor. Id. ¶¶ 30-34, 36, 37-39, 40, 42-44. In addition, D'Amico alleges that she observed Collins engage in targeted harassment of Ames after D'Amico became Ames' supervisor. Id. ¶ 44. Although D'Amico raised concerns about this conduct with Collins' supervisors, Captain Gillottee and Chief Berg, neither took any action. Id. ¶¶ 35, 54. Ames alleges that Collins subjected him to "bullying" and "escalating harassment," and that similarly situated heterosexual male officers were not subjected to similar conduct. Id. ¶ 59. Ames further alleges that Collins retaliated against him after he complained internally by writing him up, denying him training opportunities, writing "unwarranted emails" about Ames' work, denying Ames the use of his canine vehicle, and ordering Ames to remove some of the service stripes from his uniform. Id. ¶ 59-68.

### B. Procedural History

Both Plaintiffs filed complaints with the Fair Employment Housing Commission and the Equal Employment Opportunity Commission and both were issued right to sue notices. Id. ¶ 16-17. The Plaintiffs subsequently sued the City of Novato and Lieutenant Collins in this Court. ECF Nos. 1, 4. In their First Amended Complaint ("FAC"), the Plaintiffs do not explicitly allege that that they are suing Lieutenant Collins in his official capacity, but they allege that Lieutenant Collins was acting as the City's "agent" at all relevant times and that the city ratified his conduct. ECF No. 4. ¶ 12. The Plaintiffs assert causes of action under Title VII for discrimination and harassment on the basis of sex. Id. At 15-16. In addition, they each assert causes of action for discrimination, harassment, retaliation, and failure to prevent discrimination under the California Fair Employment and Housing Act ("FEHA"). Id. At 17-24. They both seek damages, as well as declaratory and injunctive relief. Id. at 25-29.

## II. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this

controversy arises under federal law. This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

### III.   LEGAL STANDARDS

#### A.   Motions to Sever under Rule 20 and Rule 21

Federal Rule of Civil Procedure 20(a)(1) governs permissive joinder of plaintiffs. That Rule provides the following:

> Persons may join in one action as plaintiffs if:
>
> **(A)** they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). "If joined plaintiffs fail to meet both of these requirements, the district court may sever the misjoined plaintiffs, as long as no substantial right will be prejudiced by the severance. Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997) (citing Fed. R. Civ. P. 21)). "Even once these requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000) (quoting Desert Empire Bank v. Insurance Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980)). District courts have "broad discretion" when deciding whether to grant severance. Id. at 1297. "Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and added expense." Coughlin, 130 F.3d at 1351.

#### B.   Motions to Dismiss under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

1   legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

2   The Court must "accept all factual allegations in the complaint as true and construe the pleadings

3   in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th

4   Cir. 2005).

## IV. DISCUSSION

### A. Motion to Sever

Defendants City of Novato and Lieutenant Collins move to sever Plaintiff Sasha D'Amico's claims into an independent action that will proceed separately. ECF No. 20. Defendants argue that severance is appropriate because D'Amico's claims involve separate and unrelated acts of discrimination, there are no common legal or factual questions, the Plaintiffs' respective claims will involve different evidence and witnesses, and joinder prejudices the Defendants by making the litigation more expensive and confusing the jury. Id. The Court is not persuaded.

The Plaintiffs have satisfied both requirements for permissive joinder under Rule 20. First, their claims arise from the same series of events that occurred while the Plaintiffs were working in the same squad under the supervision of Lieutenant Collins at the City of Novato Police Department. Although D'Amico alleges discrimination based on her sex and Ames alleges discrimination based on his sexual orientation, their claims are factually interrelated. For example, D'Amico alleges that she witnessed Collins harass Ames on at least one occasion. FAC, ECF No. 4 ¶ 44. She further alleges that Collins discriminated against her by encouraging her subordinates to undermine her authority as a supervisor, and that Collins falsely claimed that she did not properly supervise the officers under her command. Id. ¶ 46, 39. And Ames alleges that Collins targeted him in part because he was D'Amico's subordinate and because he had raised concerns about Collins' discriminatory behavior. Id. ¶¶ 44, 56, 57, 58. In short, both of their claims arise from the alleged pattern and practice of discriminatory employment practices carried out by Lieutenant Collins and others in the City of Novato Police Department between 2013 and 2016. Id. ¶¶ 30, 70. Second, adjudication of the Plaintiffs' claims will involve common factual questions about Lieutenant Collins' conduct toward D'Amico, Ames, and the rest of their squad. The

Plaintiffs' allegations against Lieutenant Collins as a "single, common-decision maker" serve as the "logical link" between the plaintiffs' respective claims. Wynn v. Nat'l Broad. Co., 234 F. Supp. 2d 1067, 1086 (C.D. Cal. 2002), dismissed, No. CV00-11248-SVW(RZX), 2002 WL 31681865 (C.D. Cal. Mar. 6, 2002) (citing several cases where joinder was appropriate because the plaintiffs asserted claims against the same supervisor).

Nor will permissive joinder unfairly prejudice the Defendants or confuse the jury in these circumstances. This case involves just two Plaintiffs with substantially similar legal claims that arise out of the same factual allegations and are made against the exact same Defendants. See Corona v. Knowles, No. 1:08CV00237LJODLB, 2009 WL 3698510, at *4-5 (E.D. Cal. Nov. 4, 2009) (holding that joinder would not prejudice the defendant where the action involved just two plaintiffs who asserted the same claim and made the same factual allegations against the same defendants, even though there were some factual variations in their respective claims). Unlike the cases relied upon by the Defendant, this case does not involve a "parade of terminated employees" or a plethora of unrelated defendants. Cf. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000) (holding that the lower court did not abuse its discretion by severing the plaintiffs' claims because the defendant would have been prejudiced if ten different employees testified at one trial); Wynn v. Nat'l Broad. Co., 234 F. Supp. 2d 1067, 1088-89 (C.D. Cal. 2002), dismissed, No. CV00-11248-SVW(RZX), 2002 WL 31681865 (C.D. Cal. Mar. 6, 2002) (holding that joinder would unfairly prejudice the defendants and confuse the jury because there were fifty separate defendants and a "multitude of isolated agreements and decision-makers and corporate families," which created "a substantial risk that one Employer or Agency Defendant will be tainted by the alleged misdeeds of another, unfairly resulting in guilt by association"). Here, the risk of prejudice and jury confusion is slight.

Finally, joinder will promote judicial economy. Given the factual overlap between the Plaintiffs' respective claims, separate trials would require duplicative evidence and witness testimony. For example, Defendant Lieutenant Collins and Chief Berg would have to testify at both trials. In addition, Plaintiff D'Amico would likely have to testify in Plaintiff Ames' trial because she was his direct supervisor and claims to have witnessed Lieutenant Collins harassing

1    Ames. Therefore, joinder of the Plaintiffs' claims is more efficient and makes litigation less
2    expensive for both parties.
3        For all of these reasons, the Court denies the Defendants' motion to sever Plaintiff
4    D'Amico's claims.

### B. Motion to Dismiss

#### 1. Title VII Claims against Lieutenant Collins

First, the Defendants argue that the Plaintiffs' gender discrimination and gender harassment claims against Lieutenant Collins under Title VII should be dismissed with prejudice because an individual employee cannot be held liable for damages under Title VII. ECF No. 18 at 2, 5. In response, Plaintiffs concede that Lieutenant Collins cannot be held liable for damages under Title VII, but they argue that Lieutenant Collins may still be held liable for injunctive and declaratory relief. ECF No. 24 at 2-3.

The Ninth Circuit has held that "Congress did not intend to impose individual liability on employees" under Title VII and accordingly has "protect[ed] supervisory employees from liability in their individual capacities." See Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993) (holding that the plaintiff's Title VII claims against the individual defendant employees for monetary relief were properly dismissed for failure to state a claim). This rule is rooted in the language of Title VII, which limits liability to an "employer" – i.e., "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. §§ 2000e-3, 2000e(b). Although some circuits have held that the inclusion of the word "agent" extends Title VII liability to individual employees, the Ninth Circuit has held that the term "agent" was only included to incorporate respondeat superior liability into the statute. See id.; 1 Manual on Employment Discrimination § 1:28 (describing the circuit split as to whether individual employees may be held liable under Title VII). Based on this reasoning, it is well-established that individual employees cannot be held liable for damages under Title VII. Holly D. v. California Inst. of Tech., 339 F.3d 1158, 1179 (9th Cir. 2003) ("We have consistently held that Title VII does not provide a cause of action for damages against supervisors or fellow employees."). And the Ninth Circuit seems to have extended this principle to bar *all* individual

liability under Title VII, regardless of the relief sought.  See Mujadzic v. Sera, 332 F. App'x 437, 437–38 (9th Cir. 2009) ("[I]ndividual employees cannot be held liable under Title VII.").

Although they may not be held liable in their individual capacities, employees may be held liable under Title VII in their official capacities.  See Ortez v. Washington Cty., State of Or., 88 F.3d 804, 808 (9th Cir. 1996) (affirming dismissal of the Title VII claims against individual defendants in their individual capacities, but holding that the plaintiff stated a claim against the individual defendants in their official capacities and against the employer under the theory of respondeat superior).  And there is some disagreement as to whether a plaintiff may seek injunctive relief from an individual defendant who is sued in his or her official capacity.  At least one court has directly endorsed this view.  See Carmen v. San Francisco Unified Sch. Dist., 982 F. Supp. 1396, 1408–09 (N.D. Cal. 1997), aff'd, 237 F.3d 1026 (9th Cir. 2001) (dismissing the plaintiff's Title VII claims against the individual defendants in their individual capacities with prejudice, but allowing the plaintiff's Title VII claims against the individual defendants in their official capacities to proceed because "individual defendants may be held liable under Title VII for acts performed in an official capacity under the theory of respondeat superior, and injunctive relief is available.") (internal citations omitted).  Two other courts have endorsed this view in dicta.  See Sattar v. Unocal Corp., 829 F. Supp. 331, 334-35 (N.D. Cal. 1993) (endorsing the view that "individual agents of the employer may be the subject of injunctive relief, but not monetary relief" even though "[the plaintiff] did not seek injunctive relief against any defendant"); Sembach v. Club One, No. 3:10-CV-00654-LRH, 2011 WL 6780881, at *3 (D. Nev. Dec. 27, 2011) ("And while injunctive relief might be sought against a supervisor under Title VII and the AREA, *see Sattar v. Unocal Corp.,* 829 F.Supp. 331 (N.D.Cal.1993), Plaintiff's amended complaint includes no request for such relief.").[1]

---

[1] But see Kennedy v. Kings Mosquito Abatement Dist., No. 1:12-CV-1458 AMI MJS, 2013 WL 3968150, at *3 (E.D. Cal. July 31, 2013) (dismissing the plaintiff's Title VII claims for injunctive relief against individual employees with prejudice where the court presumed that the individual defendants were being sued in their official capacity because "it appears settled that in the Ninth Circuit neither Title VII nor ADEA will support individual liability for claims of discrimination or retaliation).

The Plaintiffs only cite to one case in their opposition brief: Shah v. Mt. Zion Hospital & Medical

7

Ultimately, the Court does not need to resolve this disagreement. Even if the plaintiffs intend to sue Lieutenant Collins in his official capacity for injunctive relief,[2] that claim is duplicative because the City is also named as a defendant in this action. Where the plaintiff sues both the individual defendant in his or her official capacity and the entity itself, "the court may dismiss the officer as a redundant defendant" because "[a]n official capacity suit against a municipal officer is equivalent to a suit against the entity." Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008) (citing Kentucky v. Graham, 473 U.S. 159, 165–66 (1985)). For this reason, courts have dismissed Title VII claims against individual employees sued in their official capacities as redundant where the employer is also named as a defendant. See, e.g., Okemgbo v. Washington State Dep't of Ecology, No. 12-CV-5119-TOR, 2013 WL 633132, at *2 (E.D. Wash. Feb. 20, 2013); Hodge v. Oakland Unified Sch. Dist., No. C 09-04719 RS, 2010 WL 2721528, at *3 (N.D. Cal. July 7, 2010) (dismissing the individual defendants with prejudice where the plaintiff did not explain "why it would be appropriate to include both the [employer] and the individuals in their official capacities" given that injunctive relief "would necessarily be against [the employer], and by definition applicable to the individual defendants"). Here, any injunctive relief against the City would necessarily apply to Lieutenant Collins as well. Therefore, the Court dismisses the Plaintiffs' Title VII claims against Lieutenant Collins with prejudice because they are duplicative.

### 2. FEHA Claims against Lieutenant Collins

Next, the Defendants argue that the Plaintiffs' FEHA claims against Lieutenant Collins – for discrimination, retaliation, and failure to prevent discrimination – should similarly be

---

Center, 642 F.2d 268, 272 (9th Cir. 1981). ECF No. 24 at 2. Although Shah supports the proposition that a plaintiff may generally seek equitable relief under Title VII, it does not address whether the plaintiff may seek such relief from an individual employee defendant because there was no individual employee defendant in that case. Shah, 642 F.2d at 272, 269-270.

[2] It is unclear whether the Plaintiffs' are suing Lieutenant Collins in his official capacity. The Plaintiffs' do not state anywhere in their complaint or in their opposition to the motion to dismiss that they intend to sue Lieutenant Collins in his official capacity. See generally Compl., ECF No. 4; ECF No. 24. The complaint does allege, however, that Collins was acting as the City's "agent" at all relevant times and that the city ratified his conduct. ECF No. 4. ¶ 12. The Court construes these allegations to mean that the Plaintiffs intend to sue Lieutenant Collins in his official capacity.

1   dismissed with prejudice because an individual employee may not be held liable under FEHA.
2   ECF No. 18 at 6-7.  Again, the Plaintiffs argue that they may still seek injunctive or declaratory
3   relief from Lieutenant Collins.  ECF No. 24 at 2.
4         Like its federal counterpart, FEHA makes it unlawful for an "employer" to discriminate,
5   retaliate, or fail to prevent discrimination against a person.  Cal. Gov't Code §§ 12940(a),
6   12940(h), 12940(k).  Based on this language, the California Supreme Court has held that
7   individual employees may not be sued for discrimination under § 12940(a) of FEHA.  Reno v.
8   Baird, 18 Cal. 4th 640, 663 (1998); Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 80 (1996)
9   ("[O]nly employers—and not individual supervisory employees—are at risk of liability for
10  discrimination.").  Nor may they be sued for retaliation under § 12940(h) FEHA.  Jones v. Lodge
11  at Torrey Pines P'ship, 42 Cal. 4th 1158, 1160, 1173 (2008) ("[T]he employer is liable for
12  retaliation under section 12940, subdivision (h), but nonemployer individuals are not personally
13  liable for their role in that retaliation.").  Although the California courts have not ruled specifically
14  on the availability of individual liability for failure to prevent discrimination under § 12940(k) of
15  FEHA, that provision similarly limits liability to the "employer," and therefore the same principle
16  applies.  See Minor v. Fedex Office & Print Servs., Inc., No. 16-CV-00532-LHK, 2016 WL
17  1623760, at *16 (N.D. Cal. Apr. 25, 2016) (applying the reasoning from Reno and Jones to
18  another provision of the FEHA, § 12940(m), and holding that supervisory employees could
19  similarly not be held liable under that provision).
20        In sum, the Plaintiffs may not sue an individual supervisory employee like Lieutenant
21  Collins for discrimination, retaliation, or failure to prevent discrimination under FEHA.  The
22  Court therefore dismisses those claims against Lieutenant Collins with prejudice.

### 3. Ames' Claim for Gender Harassment under FEHA

24        Finally, the Defendants argue that Ames' claim for harassment based on his sexual
25  orientation under FEHA should be dismissed because Ames alleges only discriminatory personnel
26  management functions that do not constitute harassment.  ECF No. 18. at 7-9.[3]

---

[3] The Defendants have not moved to dismiss Plaintiff D'Amico's FEHA harassment claim.  ECF No. 27 at 3.

9

FEHA prohibits harassment of an employee. Cal. Gov't Code § 12940(j)(1).[4] To state a claim for harassment under FEHA, the plaintiff must demonstrate that: (1) he is a member of a protected group; (2) he was subjected to harassment because he belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment. Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1244 (9th Cir. 2013) (citing Aguilar v. Avis Rent A Car Sys., Inc., 21 Cal.4th 121 (1999)).

The California Supreme Court has defined harassment as "conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 63 (1996). For example, "harassment includes, but is not limited to, verbal epithets or derogatory comments, physical interference with freedom of movement, derogatory posters or cartoons, and unwanted sexual advances." Id.; see also Cal. Code Regs. tit. 2, § 11019 (defining harassment). By definition, then, harassment does *not* include the performance of necessary personnel management duties, such as "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like." Id. at 63-65. In other words, "discrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." Roby v. McKesson Corp., 47 Cal. 4th 686, 707 (2009), as modified (Feb. 10, 2010). However, "official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message" if those actions "establish a widespread pattern of bias." Id. at 709.

---

[4] Although most provisions in FEHA limit liability to the "employer," § 12940(j)(3) expressly allows for individual liability for harassment. Cal. Gov't Code § 12940(j)(3) ("An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action."). The Defendants do not dispute that Lieutenant Collins may be held personally liable for harassment. ECF No. 27 at 3.

1        Plaintiff Ames has not pleaded sufficient facts to support a cognizable harassment claim
2 under FEHA.  Ames uses the word "harass" throughout his complaint, Compl., ECF No. 4  ¶¶ 56,
3 57, 59, but these conclusory allegations are not sufficient on their own to state a plausible claim
4 for harassment.  Twombly, 550 U.S. at 545.  And almost all of Ames' factual allegations are
5 related to Lieutenant Collins' performance of necessary personnel management duties, such as
6 "[l]imiting promotional opportunities to plaintiff," "[s]ubjecting plaintiff to unwarranted
7 disciplinary action," "writing up Plaintiff three times and denying him training opportunities,"
8 "den[ying] [plaintiff] use of his canine vehicle," and ordering the plaintiff to remove some of his
9 uniform service stripes in accordance with the service stripe policy.  Compl., ECF No. 4 ¶¶ 57, 59,
10 62-64, 66-68.  Although these allegations support a discrimination claim under FEHA, they are
11 insufficient as a matter of law to state a claim for harassment under FEHA.  See, e.g., ANA Maria
12 Soares v. California, No. CV21600128WBSEFB, 2016 WL 3519411, at *3-4 (E.D. Cal. June 28,
13 2016) (dismissing the plaintiff's FEHA harassment claim with leave to amend because almost all
14 of the alleged harassment involved personnel management actions); Banawis-Olila v. World
15 Courier Ground, Inc., No. 16-CV-0982-PJH, 2016 WL 2957131, at *6-7 (N.D. Cal. May 23,
16 2016) (dismissing the plaintiff's conclusory harassment claim because "the few facts plaintiff does
17 allege relate to personnel and managerial decisions" and the plaintiff had "not pointed to any
18 conduct outside the scope of management's job duties").
19        The only allegations in the complaint that could possibly relate to conduct that falls outside
20 the scope of Lieutenant Collins' essential personnel management duties are Ames' allegations that
21 Lieutenant Collins subjected him to "bullying" and that Lieutenant Collins "wrote unwarranted
22 emails concerning [plaintiff's] work in the canine unit."  Id. ¶ 59, 61.  Although "bullying" would
23 certainly fall outside the scope of Lieutenant Collins' necessary personnel management duties,
24 Ames has provided no factual content to support this claim.  Nor has he provided sufficient factual
25 content to demonstrate that the "unwarranted emails" plausibly fell outside the scope of Lieutenant
26 Collins' essential job performance.
27        Because Ames has failed to sufficiently allege harassing conduct, the Court grants the
28 Defendant's motion to dismiss that claim.

### 4. Leave to Amend

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting Doe, 58 F.3d 494, 497 (9th Cir. 1995)).  Amendment would be futile as to Plaintiffs' Title VII claims and FEHA claims for discrimination, retaliation, and failure to prevent discrimination against Lieutenant Collins because he may not be held individually liable for those claims and any claims against him in his official capacity would be duplicative.  However, the Court grants Plaintiff Ames leave to amend his complaint as to his FEHA harassment claim.  In his amended complaint, Ames should allege sufficient factual content to demonstrate that Lieutenant Collins engaged in harassing conduct that fell outside the scope of his personnel management duties.  Plaintiff is ordered to file a second amended complaint within thirty days of this order.

## CONCLUSION

The Court denies the Defendants' motion to sever Plaintiff D'Amico's claims into a separate action; grants the Defendants' motion to dismiss the Plaintiffs' Title VII claims against Lieutenant Collins; grants the Defendants' motion to dismiss the Plaintiffs' FEHA claims for discrimination, retaliation, and failure to prevent discrimination; and grants the Defendants' motion to dismiss Plaintiff Ames' FEHA harassment claim.  The Court grants the Plaintiffs leave to amend the complaint to address the deficiencies in Ames' FEHA harassment claim, but dismisses the remaining claims against Lieutenant Collins with prejudice because amendment would be futile.

IT IS SO ORDERED.

Dated: October 14, 2016

_____
JON S. TIGAR
United States District Judge